UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| WARNER J. HUGHES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:08-CV-103 |
| | ) | (VARLAN/SHIRLEY) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the Court on Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 9; 10] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 11; 12]. Plaintiff Warner J. Hughes seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On October 28, 2004, the Plaintiff protectively filed a Title II application for disability insurance benefits and protectively filed a Title XVI application for supplemental security income. [Tr. 13.] In both applications, the Plaintiff alleged disability beginning December 31, 2000. [Tr. 13.] After her application was denied initially and upon reconsideration, Plaintiff requested a hearing. On November 16, 2006, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 13.] On January 26, 2007, the ALJ found that the Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on

January 25, 2008. [Tr. 4-7.] Thus, the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

## I. ALJ Findings

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2005.

2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b) and 416.920(b)).

3. The claimant has the following severe combination of impairments: depression, mood swings/anxiety, and lower back pain (20 CFR 404.1520(c) and 416.920(c)). Therefore, she has a severe impairment.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work that involves no more than simple to low level detailed tasks.

6. The claimant is capable of performing past relevant work as a customer service representative and companion. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a "disability," as defined in the Social Security Act, from December 31, 2000 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 15-19.]

## II. Disability Eligibility

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

3

Case 3:08-cv-00103-TAV-CCS   Document 13   Filed 02/24/09   Page 3 of 15   PageID #: 72

> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

**III.  Standard of Review**

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial

4

whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y of Health & Human Servs.,46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. Analysis

On appeal, Plaintiff argues that substantial evidence does not support the ALJ's disability determination. Plaintiff contends the ALJ erred in making the residual functional capacity ("RFC") assessment at step four by: (A) failing to give proper weight to opinions regarding the Plaintiff's mental health from Alison Y. Kirk, Ph.D., and Ronald F. Kourany, M.D., and (B) rejecting an opinion regarding the Plaintiff's physical impairments from Joseph L. Johnson, M.D, without proper explanation. [Docs. 9; 10.] The Commissioner, in response, contends substantial evidence supports the ALJ's finding both as to the Plaintiff's mental and physical impairments. [Docs. 11; 12.]

"[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [his] residual functional capacity.'" Webb v. Comm'r of Soc. Sec., 368 F.3d 629, 633 (6th. Cir. 2004) (quoting 20 C.F.R. § 416.920(a)(4)(iv)). The residual functional capacity is an assessment of how impairments, and any related symptoms, such as pain, cause physical and mental limitations that affect a claimant's abilities in a work setting. 20 C.F.R. § 416.945(a)(1). The residual functional

5

capacity is the most a clamant can do in a work setting given his or her limitations. Id. Essentially, the residual functional capacity is "what the claimant 'can and cannot do.'" Webb, 368 F.3d at 631 (quoting Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 239 (6th. Cir.2002)).

A.  *The ALJ's Assessment of the Plaintiff's Mental Impairments*

The ALJ determined that the Plaintiff's depression and mood swings/anxiety limited the Plaintiff to work that involved "no more than simple to low detailed tasks." [Tr. 18.] The Plaintiff claims that the ALJ did not cite appropriate evidence of record to support his residual functional capacity determination and failed to properly explain and articulate his findings. [Doc. 10.] Specifically, the Plaintiff claims that the ALJ "completely ignored" the medical opinions of two state agency physicians, Alison Y. Kirk, Ph.D., ("Dr. Kirk") and Ronald F. Kourany, M.D. ("Dr. Kourany"). The Commissioner responds that the ALJ's residual functional capacity determination was fully consistent with the medical opinions in evidence and that it was supported by substantial evidence. [Doc. 12.]

The Plaintiff directs the Court to a number of Dr. Kirk's findings, which the Plaintiff claims are in opposition to the ALJ's findings. In particular, the Plaintiff notes that Dr. Kirk opined that the Plaintiff is moderately limited in her ability to: maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact

6

appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. [Doc. 10.]

The Plaintiff correctly states that Dr. Kirk's summary conclusions from her consultation with the Plaintiff found moderate limitations in the above noted categories, but these limitations were coupled with Dr. Kirk's assessment that the Plaintiff had no significant limitation on her ability to: remember locations and work-like procedures; understand and remember detailed instructions; carry out short and simple instructions or detailed instructions; sustain an ordinary routine without special supervision; work in coordination with others without being distracted by them; make simple work-related decisions; ask simple questions or request assistance; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; avoid hazards and take precautions; and travel to unfamiliar places. [Tr. 215-16.]

In her residual functional capacity assessment of the Plaintiff, which followed the summary conclusions, Dr. Kirk remarked that the Plaintiff: could "understand and remember [] simple and detailed instructions," could "carry out simple and detailed instructions throughout course of normal workweek," would "have some but not significant difficulty interacting with the public, peers and supervisors," and could "adapt to infrequent change and set simple goals." [Tr. 217.]

7

Dr. Kirk's residual functional capacity assessment is consistent with the ALJ's conclusion that the Plaintiff's residual functional capacity included the ability to complete work that involved "no more than simple to low detailed tasks." While the Plaintiff was moderately limited in the categories the Plaintiff listed above, she had no significant limitations in numerous other categories, which related directly to the Plaintiff's ability to function in the workplace despite anxiety, depression, and mood swings. Accordingly, the Court concludes that the ALJ did not disregard Dr. Kirk's opinion, but rather, finds that Dr. Kirk's opinion directly supports the ALJ's assessment of the Plaintiff's residual functional capacity.

In the same vein, the Plaintiff claims that the ALJ ignored Dr. Kourany's opinion that the Plaintiff was moderately limited in her ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and set realistic goals or make plans independently of others. [Doc. 9-2.]

Dr. Kournay's summary conclusions from her consultation with the Plaintiff found moderate limitations in areas noted by the Plaintiff, but these limitations were coupled with Dr. Kourany's assessment that the Plaintiff had no significant limitation on her ability to: remember locations and work-like procedures; ability to understand, remember, and carry out short and simple instructions; sustain an ordinary routine without special supervision; make simple work-related decisions; ask simple questions or request assistance; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; avoid hazards and take precautions; and travel to unfamiliar places.

While Dr. Kournay found that the Plaintiff had moderate limitations on her ability to function socially and maintaining concentration, persistence, and pace, Dr. Kournay concluded that the Plaintiff had only mild restrictions on the activities required by daily living and "[f]rom a mental standpoint, [the Plaintiff could] perform a variety of tasks adequately." [Tr. 287; 289.] In his residual functional capacity assessment, Dr. Kourany noted the Plaintiff's ability to care for herself and her mother, cook simple meals, clean, shop, do laundry, pay bills, and socialize in her church and with her family. [Tr. 289.]

Dr. Kourany concluded that the Plaintiff could perform a variety of tasks although she would be limited by her ability to concentrate and socialize. This opinion is consistent with the ALJ's assessment of the Plaintiff's residual function capacity as including "no more than simple to low detailed tasks." The Court concludes that while the ALJ did not specifically cite Dr. Kourany's opinion, the ALJ noted his reliance on the opinions in the record and the

9

ALJ's residual functional capacity assessment is consistent with and supported by Dr. Kourany's findings.

Finally, the Court notes the ALJ's discussion of the Plaintiff's allegations of depression, mood swings, and anxiety was extremely thorough and consistent with the treatment records of the Plaintiff's treating physicians. The ALJ reviewed the Plaintiff's records of treatment from 2001 to 2006. The ALJ noted that after the Plaintiff's primary care physician prescribed Paxil for her condition in October 2000, and in April 2001 he reported that her condition had stabilized. [Tr. 17.] The ALJ relied extensively upon the records of the Helen Ross McNabb Center ("Helen Ross McNabb"), the facility which treated the Plaintiff's psychological conditions from November 2004 through 2006. As the ALJ noted, records from the Plaintiff's initial visit to Helen Ross McNabb indicated that the Plaintiff only had mild limitations on activities of daily life, interpersonal functioning, and concentration and performance, and that she had moderate limitations in her ability to adapt to change and cope with stress. [Tr. 267.] In her last recorded visit before the ALJ's determination, the Plaintiff reported that her drug regimen was helping specifically with her concentration and anxiety. [Tr. 250.][1]

The ALJ's consulted and discussed the medical evidence of record and his assessment of the Plaintiff's residual functional capacity is aligned with and supported by the records and

---

[1] While the Plaintiff sought a substitute for Trazodone because of its hangover-like side effects, the Plaintiff was pleased with Trileptal, the drug which the treating physician and nurse practitioner noted had eased both her anxiety and concentration impairments. [Tr. 249.]

10

Case 3:08-cv-00103-TAV-CCS   Document 13   Filed 02/24/09   Page 10 of 15   PageID #: 79

opinions from the Plaintiff's consultation with Dr. Kirk, Dr. Kourany, and her treating physicians. Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence.

B.   *The ALJ's Assessment of the Plaintiff's Physical Impairments*

The Plaintiff claims that although the ALJ mentioned the opinion of Joseph L. Johnson, M.D., ("Dr. Johnson") in the residual functional capacity assessment, the ALJ actually rejected the substance of Dr. Johnson's evaluation when he concluded that the Plaintiff was restricted to "medium work." [Doc. 10.] The Plaintiff argues that the ALJ did not give proper reasons for rejecting Dr. Johnson's opinion and, as a result, the case must be remanded. The Government admits that Dr. Johnson's opinion does not reflect a capacity to perform a full range of medium work, but the Government argues that the ALJ's decision is supported by substantial evidence because the ALJ explained why he found the Plaintiff to be less limited when he discussed her prior employment, her failure to take medication, her ability to care for her elderly mother, and her testimony at the hearing. [Doc. 12].

Based upon the definition of "medium work," 20 C.F.R. § 404.1567, and the parties' agreement that Dr. Johnson's opinion does not reflect a capacity to perform a full range of medium work, the Court finds that the ALJ discounted Dr. Johnson's findings, to at least some degree. Accordingly, the Court turns to the Plaintiff's allegation that the ALJ failed to address the medical opinions of record and, therefore, his decision is not supported by substantial evidence.

11

Generally, the "medical opinion of the treating physician is to be given substantial deference, and if that opinion is not contradicted, complete deference must be given." Walker v. Sec'y of Health & Human Servs., 980 F.2d 1066, 1070 (6th Cir. 1992). The reason for such a rule is clear: the treating physician has had a greater opportunity to examine and observe the patient. Id. Furthermore, as a result of the treating physician's duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. Id. (citing Schisler v. Heckler, 787 F.2d 76, 85 (2d Cir. 1986)).

If the treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight. 20 C.F.R.§§ 404.1527(d)(2); 416.927. Where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R.§§ 404.1527(d)(2); 416.927.

While the Plaintiff does not claim that Dr. Johnson was a treating physician, the Plaintiff appears to argue that the rule discussed above, which requires "good reasons" for disregarding the opinion of a treating physician, applies to Dr. Johnson, a consulting physician. The only authority the Plaintiff has cited for this proposition is Shelman v.

12

Case 3:08-cv-00103-TAV-CCS   Document 13   Filed 02/24/09   Page 12 of 15   PageID #: 81

Heckler, 821 F.2d 316 (6th Cir. 1987), a case in which the Court of Appeals for the Sixth Circuit held that testimony of a nonexamining physician was entitled to little weight in the face of a treating physician's opinion to the contrary. The Court finds that Dr. Johnson is not a treating physician, and therefore the rules regarding deference to a treating physician are not applicable to his opinion.

However, notwithstanding the inapplicability of the treating physician rule, the Court finds that the ALJ gave specific reasons for discounting Dr. Johnson's opinion based upon medical records, including those of treating physician Freddie J. Bennett, M.D., ("Dr. Bennett"), and evidence of record. First, the ALJ notes that the Plaintiff never had "significant findings" of a lower back problem on physical examination and that the Plaintiff has never had any radiology testing to confirm the presence of a lower back disorder. [Tr. 16-17.] The ALJ then specifically cited the medical records from Dr. Bennett's treatment of the lower back complaints in August 2003. The ALJ noted that the Plaintiff was found to have a "full range of motion of her spine and no tenderness." [Tr. 17.] In addition, the ALJ discussed specific aspects of Dr. Johnson's consultative notes that supported finding the Plaintiff was able to complete medium work. The ALJ noted that Dr. Johnson found the Plaintiff to have "only mild lumbar spasm and tenderness to palpation, . . . full flexion of her spine, . . . normal motor strength in the lower extremities, and [the ability to] walk on her toes, heels and do tandem gait." [Tr. 17.] Further, the ALJ found that the records indicate that the Plaintiff has not continued treatment for her back condition and does not take medication for it.

In addition to the medical evidence the ALJ considered, he relied on other statements by the Plaintiff and accounts of the Plaintiff's activities. First and foremost, the ALJ explained that the Plaintiff herself admitted at the hearing that her back pain alone would not keep her from working. [Tr. 17, 389]. Further, the ALJ noted that the Plaintiff took her mother for medical treatment regularly, cared for her mother in their home without assistance, and attended church services two to three times per month. [Tr. 17.]

The ALJ weighed the medical evidence including the records from treating physician Dr. Bennett against the records of the Plaintiff's consultation with Dr. Johnson. Further, the ALJ considered the Plaintiff's own testimony and the other descriptions of her abilities described in the evidence of record. The ALJ completed a thorough examination of the evidence which he noted in his decision, and accordingly, the Court finds that the ALJ's decision is supported by substantial evidence.

## V. Conclusion

The Court finds that the ALJ properly reviewed and weighed the evidence to determine that the Plaintiff is capable of performing medium work with no more than simple to low detailed tasks. Substantial evidence supports the ALJ's assessment of the Plaintiff's residual functional capacity, and consistent with the Plaintiff's residual functional capacity, the ALJ correctly concluded that the Plaintiff was not disabled because she could perform her past relevant work as a customer service representative and companion. Accordingly, Plaintiff's Motion For Summary Judgment [Doc. 9] is hereby **DENIED** and that the Commissioner's Motion for Summary Judgment [Doc. 11] is hereby **GRANTED**; and

14

Case 3:08-cv-00103-TAV-CCS   Document 13   Filed 02/24/09   Page 14 of 15   PageID #: 83

In addition to the medical evidence the ALJ considered, he relied on other statements by the Plaintiff and accounts of the Plaintiff's activities. First and foremost, the ALJ explained that the Plaintiff herself admitted at the hearing that her back pain alone would not keep her from working. [Tr. 17, 389]. Further, the ALJ noted that the Plaintiff took her mother for medical treatment regularly, cared for her mother in their home without assistance, and attended church services two to three times per month. [Tr. 17.]

The ALJ weighed the medical evidence including the records from treating physician Dr. Bennett against the records of the Plaintiff's consultation with Dr. Johnson. Further, the ALJ considered the Plaintiff's own testimony and the other descriptions of her abilities described in the evidence of record. The ALJ completed a thorough examination of the evidence which he noted in his decision, and accordingly, the Court finds that the ALJ's decision is supported by substantial evidence.

## V. Conclusion

The Court finds that the ALJ properly reviewed and weighed the evidence to determine that the Plaintiff is capable of performing medium work with no more than simple to low detailed tasks. Substantial evidence supports the ALJ's assessment of the Plaintiff's residual functional capacity, and consistent with the Plaintiff's residual functional capacity, the ALJ correctly concluded that the Plaintiff was not disabled because she could perform her past relevant work as a customer service representative and companion. Accordingly, Plaintiff's Motion For Summary Judgment [Doc. 9] is hereby **DENIED** and that the Commissioner's Motion for Summary Judgment [Doc. 11] is hereby **GRANTED**; and

defendant Commissioner's decision in this case denying plaintiff's applications for disability insurance benefits and supplemental security income benefits will be **AFFIRMED**; and this case will be **DISMISSED**.

      ORDER ACCORDINGLY.

                                        s/ Thomas A. Varlan
                                        UNITED STATES DISTRICT JUDGE